IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHERINE ELISABETH PATTERSON,<br><br>*Plaintiff*,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, NATIONAL CREDIT SYSTEMS, INC., TXU ENERGY RETAIL COMPANY, MRS BPO, LLC<br><br>*Defendants*. | ) | Civil No. 2:26-cv-02697-GJP |

**DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S MOTION MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**

Defendant National Credit Systems, Inc. ("NCS" or "Defendant") files this Motion for Judgment on the Pleadings Pursuant to Rule 12 and brief in support and respectfully shows the Court as follows:

INTRODUCTION

1. Plaintiff Katherine Patterson ("Plaintiff" or "Patterson") asserts a claim against NCS, a collection agency, for the alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). Plaintiff alleges that she discovered a "fraudulent" $5,915.00 account with Copper Lodge Apartments ("Copper Lodge" or the "Original Creditor") reported by NCS to Equifax and Experian (the "CRAs"). Doc. 1 at ¶ 50. She alleges the account was "inaccurate" because she did not open or authorize anyone to open an account with Copper Lodge. *Id*. at ¶ 51. Plaintiff claims that she disputed the debt to the CRAs with proof of her identity, a copy of an FTC Identity Theft Report, and a Philadelphia Police Department case card. *Id*. at ¶ 55.

2. Plaintiff claims NCS violated (a) FCRA § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation of her disputes, and (b) 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs. *Id*. at ¶¶ 181, 182.

3. Based on Plaintiff's allegations and judicial notice of a state court judgment described below obtained by the Original Creditor against the Plaintiff for the subject debt, Plaintiff's claims against NCS should be dismissed. Plaintiff's dispute fails to raise an actionable "inaccuracy" in the data furnished by NCS because such claimed inaccuracy, that Plaintiff is responsible for the debt, is not objectively and readily verifiable.

RULE 12(C) STANDARD OF REVIEW

4. A motion for judgment on the pleadings under Rule 12(c) "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). In deciding a motion for judgment on the pleadings, a court may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Id*.

5. The court "accept[s] all factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff…." *Stapleton v. TransUnion LLC*, No. 25-5944, 2026 U.S. Dist. LEXIS 122180, at *4 (E.D. Pa. 2026) (quoting *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021)); *Fleisher v. Standard Ins. Co*., 679 F.3d 116, 120 (3d Cir. 2012); *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam)). However, the court "need not 'accept as true a legal conclusion couched as a factual allegation.'" *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 248 (3d Cir. 2022) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)) (citation omitted)).

6. A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (first quoting FED. R. CIV. P. 8(a)(2); then quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (second alteration in original)). "A complaint is properly dismissed for failing to state a claim 'if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility.'" *Talley v. Pillai*, 116 F.4th 200, 206-07 (3d Cir. 2024) (alteration in original) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020) (quoting *Twombly*, 550 U.S. at 555).

REQUEST TO TAKE JUDICIAL NOTICE

7. At the motion to dismiss stage, a trial court may take judicial notice of and consider public records of other judicial proceedings without converting the motion to dismiss to a summary judgment motion. *Kelly v. Bus Info. Grp., Inc.*, No. 15-6668, 2017 U.S. Dist. LEXIS 96953, at *5, *12 (E.D. Pa. 2017) (citing *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005)).

8. Attached as Exhibit "A" are certified copies of the following documents from an eviction proceeding, Case Number 2234100455979; *BH Copper Bridges LLC v. Katherine Patterson*; in the Justice Court, Precinct 4, Place 1 of Harris County, Texas:

(a) Petition for Eviction from Residential Premises with Copper Lodge Notice to Vacate for Non-Payment of Rent attached (the "Petition"); and

(b) Eviction – Judgment/Dismissal Order Non Jury (the "Judgment").

NCS requests the Court to take judicial notice, pursuant to FRE 201, of these public records of the judicial proceeding in Texas, specifically including the Judgment. *See McRoberts v. Howard Holland, Warden of the Chester Cty. Prison*, No. 26-132, 2026 U.S. Dist. LEXIS 42717, at *1 n.2 (E.D. Pa. Feb. 4, 2026) (stating that courts "may take judicial notice of relevant federal and state court records, dockets, and/or court opinions because they are matters of public record").

9. As shown by the certified records, the Original Creditor, BH Copper Bridges, LLC d/b/a Copper Lodge, filed an eviction proceeding seeking damages and possession of the leased premises at 1000 Cypress Station Dr. #1313, Houston, Texas. This was not a default judgment but rather was a contested lawsuit. At trial, the Original Creditor obtained the Judgment against Plaintiff for possession and money damages. Notably, the Judgment indicates Plaintiff (who was the defendant in that matter) was present and "left the courtroom."

## ARGUMENT & AUTHORITIES

### SUMMARY OF ARGUMENT

10. Based on Plaintiff's allegations and judicial notice of the Judgment taken against Plaintiff by the Original Creditor, Plaintiff's claims against NCS should be dismissed because Plaintiff's dispute fails to raise an actionable "inaccuracy" in the data furnished by NCS to the CRAs. Specifically, Plaintiff's dispute that she is not responsible for the debt is not objectively

and readily verifiable in light of the Judgment. The FCRA dispute investigation process does not require NCS to act as a tribunal and effectively overturn the Judgment.

FCRA DISPUTE INVESTIGATION PROCESS

11. Upon notice of a consumer's dispute of credit information, the CRA is required to provide "[p]rompt notice of [the] dispute to [the] furnisher" who "provided any item of information in dispute." *Ritz v. Equifax Info. Servs., LLC*, No. 23-2181, 2025 U.S. App. LEXIS 10835, at *8 (3d Cir. 2025) (quoting 15 U.S.C. § 1681i(a)(2)). Upon receiving notice of a consumer's dispute with a CRA under § 1681i(a)(2), the furnisher shall "conduct an investigation with respect to the disputed information" and "report the results of the investigation to the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(A),(C). If the investigation determines the disputed information is "inaccurate or incomplete or cannot be verified," the furnisher shall, as appropriate, "modify," "delete," or "permanently block the reporting of that item of information." *Id*. § 1681s-2(b)(1)(E). The FCRA provides a private cause of action and civil liability for negligent or willful violations of § 1681s-2(b). 15 U.S.C. §§ 1681n, 1681o, 1681s-2(c).

PLAINTIFF'S THRESHOLD BURDEN TO SHOW AN ACTIONABLE INACCURACY

12. "[F]ederal circuit courts that have interpreted § 1681s[-]2(b) agree on two threshold requirements for a claim under the statute:" (1) "[t]he plaintiff must make a prima facie showing that the . . . furnisher provided incomplete or inaccurate information," and (2) "[t]he plaintiff must . . . show that the incompleteness or inaccuracy was the product of an unreasonable investigation." *Ritz*, 2025 U.S. App. LEXIS 10835, at *8-9 (quoting *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023) (citations omitted))[1]; *see also Johns v. Nelnet*, No. 22-4791, 2026

[1] The Third Circuit adopted this two-part approach for CRAs in *Bibbs v. Trans Union LLC*, 43 F.4th 331, 344-45 (3d Cir. 2022) and applies the same approach to furnishers as well. *See Seamans*, 744 F.3d at 865 (agreeing with sister circuits that the tests for an investigation under § 1681s-2(b) and § 1681i are largely the same); *Ritz* at *9 n. 5; *see also Chiang* at 37 (same); *Denan v. Trans Union LLC*, 959 F.3d

U.S. Dist. LEXIS 70403, at *61-62 (E.D. Pa. 2026) ("It is a threshold requirement for liability under §§ 1681e(b), 1681i, and 1681s-2 that the disputed information was in fact inaccurate");

13. Under the first requirement, if there is no threshold showing of inaccuracy, then the inquiry stops there, and "the reasonableness of the investigation is not in play." *Ritz* at *9 (citing *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022); *cf. Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022) ("[B]efore a court can consider whether an agency's reinvestigation was reasonable, it must first determine that the disputed information was in fact inaccurate.")).

14. Courts disagree over whether a consumer can "make a prima facie showing of inaccuracy" by raising a legal dispute as to the validity of a reported debt with a furnisher and/or credit reporting agency. *Ritz* at *9 (citing *Gross*, 33 F.4th at 1251 (internal quotation marks and citation omitted)). To be actionable, some courts require a showing of "factual inaccuracy, rather than the existence of disputed legal questions" under § 1681s-2(b), reasoning "furnishers are neither qualified nor obligated to resolve" disputes of a legal nature. *Id*. at *9 n.6 (citing *Chiang v. Verizon New Eng. Inc*., 595 F.3d 26, 38 (1st Cir. 2010) (internal quotation marks and citation omitted)). To be actionable, other courts reason "[t]he distinction between 'legal' and 'factual' issues" in this context "is ambiguous, potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a 'legal' one." *Id*. (quoting *Gross* at 1253) (internal quotation marks omitted)). Some courts further reason that a legal dispute "alleges an 'inaccuracy' so long as the challenged information is objectively and readily verifiable." *Id*. (quoting *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023)). Under this

290, 296 (7th Cir. 2020) ("[O]ne of the most basic rules of statutory interpretation is that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks and citations omitted)).

approach, furnishers need not correct legal disputes only resolvable by a court of law but should "investigate" and "highlight or resolve . . . questions of legal significance" that the furnisher is in a position to objectively and readily verify, such as "whether debts are actually due and/or are collectible." *Id*. (quoting *Holden v. Holiday Inn Club Vacations Inc*., 98 F.4th 1359, 1368 (11th Cir. 2024) (internal quotation marks and citation omitted)).

15. The Third Circuit has not addressed whether a legal dispute constitutes a "dispute with regard to the completeness or accuracy of any information" that must be investigated. *Id.* at *9. Nor has it addressed whether a furnisher must resolve such disputes as part of their obligation to correct "incomplete" or "inaccurate" information following a dispute. *Id*.

16. However, over the last three years, the Second, Fourth, Fifth, Tenth, and Eleventh Circuits have found that in order to be actionable, an inaccuracy must be "objectively and readily verifiable." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025) (quotation marks omitted); *see also Sessa*, 74 F.4th 38, 42; *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 288 (5th Cir. 2025); *Holden*, 98 4th at 1369 (citation modified); *Ward v. Nat'l Credit Sys.*, No. 25-1078, 2026 U.S. App. LEXIS 21295, at *20-22 (10th Cir. July 20, 2026).

17. The recent opinion by the Tenth Circuit issued on July 20, 2026, *Ward v. National Credit Systems, Inc.*, is particularly instructive. Without citing to the entire analysis, the Tenth Circuit concludes that (a) it is the plaintiff's threshold burden to establish the reported information is actionably inaccurate, (b) an inaccuracy is only actionable if that information is objectively and readily verifiable by the furnisher as containing a mistake or error, and (c) whether plaintiff satisfied that threshold burden is a question of law for the court to decide:

> We thus follow the Fourth, Second, Fifth, and Eleventh Circuits and conclude that under the FCRA "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable" by the furnisher as containing a mistake or error. *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025)

> (quotation marks omitted); *see also Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023); *Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 288 (5th Cir. 2025); *Holden v. Holiday Inn Club Vacations, Inc.*, 98 4th 1359, 1369 (11th Cir. 2024) (citation modified); *Cf. Gross*, 33 F.4th at 1252 (the Ninth Circuit "defining inaccuracy under FCRA as information that is 'patently incorrect' or materially misleading"). And as explained, courts must make a threshold legal determination under this standard if the furnisher challenges the sufficiency of the consumer's claim because inaccuracy is a prima facie element of a § 1681s-2(b) claim. *See Holden*, 98 4th at 1369 ("[I]n determining whether a claimed inaccuracy is potentially actionable under § 1681s-2(b), *a court must determine* . . . whether the information in dispute is 'objectively and readily verifiable.'" (emphasis added) (quotation marks omitted)).
>
> That brings us to the final, important point: What does it mean for information to be objectively and readily verifiable as inaccurate? "[A] dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either." *Roberts*, 131 F.4th at 251. Put another way, "purely factual or transcription errors or a straightforward application of law to facts constitute 'objectively and readily verifiable' information." *Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 U.S. App. LEXIS 14033, 2025 WL 1620921, at *2 (11th Cir. June 9, 2025) (per curiam) (internal quotation marks omitted). "Conversely, allegedly inaccurate information that stems from a dispute without a straightforward answer does not." *Id.* (citation modified). And because *Wright*'s purported legal-factual distinction does not control our interpretation of the inaccuracy element, we "decline to impose a bright-line rule that only purely factual or transcription errors are actionable under the FCRA." *Holden*, 98 F.4th at 1369 (internal quotation marks omitted). *See also Roberts*, 131 F.4th at 252 ("[B]oth legal and factual disputes can form the basis of a § 1681s-2(b) claim, so long as they are objectively and readily verifiable."); *Sessa*, 74 F.4th at 43 ("[T]here is no bright-line rule providing . . . that only purely factual or transcription errors are actionable under the FCRA.").

*Ward*, 2026 U.S. App. LEXIS 21295, at *20-22.

18. Under this prevailing standard requiring an objectively and readily verifiable standard, Plaintiff's allegations fail to demonstrate an actionable inaccuracy under the FCRA. However, to the extent this Court analyzes Plaintiff's threshold burden under the previous standards requiring a factual dispute to be actionable, or a legal one for which there is a straightforward answer to be actionable, Plaintiff cannot satisfy that burden.

## A. Factual Dispute

19. While the Third Circuit has not settled on a standard for determining an actionable inaccuracy under the FCRA, it has held that, at a minimum, factually incorrect information is "inaccurate" for purposes of FCRA. *Seamans v. Temple Univ*., 744 F.3d 853, 865 (3d Cir. 2014) (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)). It has held that even if the information is technically correct, it may nonetheless be inaccurate if, through omission, it "create[s] a materially misleading impression." *Id*. (citations omitted). Whether technically accurate information was "'misleading in such a way and to such an extent that [it] can be expected to have an adverse effect'" is generally a question to be submitted to the jury. *Id*. (citations omitted).

20. Plaintiff's dispute of the debt did not demonstrate a factual inaccuracy in NCS's reporting of the debt under the FCRA. Plaintiff alleges that the debt is invalid because she neither initiated nor authorized the account with Copper Lodge and that she supported it with an FTC Identity Theft Report and police report incident card. But a consumer's submission of an identity theft report supported solely by her own allegations cannot establish the disputed information was inaccurate. *See Ward* at *16-17 (citing 15 U.S.C. § 1681s-2(a)(1)(D) (A furnisher will have "reasonable cause to believe that the information is inaccurate" when it has "specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." (emphasis added)). Plaintiff's dispute contained no objective evidence that NCS's reporting of the debt was inaccurate, *i.e*., that the debt was not hers, beyond her subjective statements to the contrary.

21. In contrast, Copper Lodge had obtained the Judgment for the debt as part of an eviction proceeding. That Judgment indicates that the defendant, Plaintiff in this case, was served

with the action and actually appeared in court for the proceedings. *See* Exhibit "A." That adjudication objectively and factually evidences that Plaintiff was the debtor and that NCS's reporting of the debt was accurate, contrary to Plaintiff's subjective claim. At most, there is a factual conflict regarding Plaintiff's liability for the debt that NCS could not have resolved considering the Judgment on Plaintiff's liability for the debt. Therefore, Plaintiff's dispute did not raise a factual inaccuracy, without which, Plaintiff has no FCRA claim as a matter of law.

### B. Legal Dispute

22. Plaintiff's dispute also raised a legal dispute regarding the effect of the state court judgment and whether Plaintiff's denial of liability could alter the effect of the Judgment. Plaintiff's FCRA claims against NCS are an improper collateral attack on the Judgment and are not the proper forum for resolving that legal issue. Because Plaintiff's dispute is a collateral attack on the Judgment, even a jury cannot resolve the issue—only a court can. Therefore, NCS is unable to resolve Plaintiff's dispute.

23. Because consumer reporting agencies lack the authority to adjudicate legal disputes, "courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims." *Reyes*, 140 F.4th at 287 (5th (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010)). Instead, they recognize that "[t]he FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed." *Id*. (quoting *Wright v. Experian Info. Sols., Inc*., 805 F.3d 1232, 1244 (10th Cir. 2015)).

24. In dealing with "collateral attack" issues in other FCRA cases, this Court has stated that "[t]his Court agrees with Judge Pratter's conclusion in *Leboon v. Equifax Info. Servs., LLC*, No. 18-1978, 2019 U.S. Dist. LEXIS 118761, at *12 (E.D. Pa. 2019), and in *Berkery v. Equifax*

*Info. Servs. LLC*, No. 18-3417, 2019 U.S. Dist. LEXIS 73906, at *12 (E.D. Pa. 2019), that the doctrine also operates to preclude a plaintiff from establishing a violation of section 1681e(b) where the plaintiff challenges a legal inaccuracy, rather than a factual inaccuracy, in a credit report." *Chijioke-Uche v. Equifax Info. Servs., LLC*, No. 19-4006, 2021 U.S. Dist. LEXIS 95614, at *9 n.4 (E.D. Pa. 2021).

25. This Court reached a similar conclusion in *Berkery v. Equifax Info. Servs. LLC*. In that case, the plaintiff's Capital One credit card always had a minimum monthly payment of $25, until, as the plaintiff alleged, Capital One increased the minimum without cause., 2019 U.S. Dist. LEXIS 73906, at *2. The plaintiff closed the account and continued to pay only $25 as the minimum monthly payment. *Id*. He disputed the consumer reporting agencies' reporting of the account as overdue and sued them under the FCRA for misreporting the account. *Id*. In granting the CRAs' 12(b)(6) motion, this Court held that the plaintiff's dispute centered on the validity of the underlying debt, not on a factual inaccuracy. *Id*. at *12. It reasoned as follows:

> Based on the facts as they are presented, it is difficult to see how even the most thorough reinvestigation of facts could have solved the issue at hand. The reinvestigation Mr. Berkery requests would have required the consumer reporting agencies to decide whether Capital One was legally allowed to unilaterally increase Mr. Berkery's minimum monthly payment. "This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency ... is neither qualified nor obligated to resolve under the FCRA." *DeAndrade*, 523 F.3d at 68. *See Carvalho*, 629 F.3d at 892 ("A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits."). Indeed, as a matter of fairness, due process, and policy, it is difficult to imagine that resolving an issue such as the one extant should be assigned to the consumer reporting agency. As such, Mr. Berkery failed to state a claim under § 1681i.

*Id*. at *12-13.

26. The majority view is that the FCRA does not require a data furnisher to resolve disputes such as Plaintiff's. *See Wright*, 805 F.3d at 1242:

> A reasonable reinvestigation, however, does not require [credit reporting agencies] to resolve legal disputes about the validity of the underlying debts they report. *See Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir. 2010) ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC,* 523 F.3d 61, 68 (1st Cir. 2008) (holding a reasonable reinvestigation does not entail resolving legal issue[s] that a credit agency ... is neither qualified nor obligated to resolve under the FCRA").

*See also Denan*, 959 F.3d at 296:

> In this conclusion we join the First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *Carvalho*, 629 F.3d at 892 (quoting *DeAndrade*, 523 F.3d at 68); *accord Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015) (citing *Carvalho*, 629 F.3d at 892) ("The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed."). The correct way to resolve legal defenses to Plain Green and Great Plains' loans was in a lawsuit against those lenders. "If a court had ruled the [loans] invalid and Trans Union had continued to report it as a valid debt, *then* [plaintiffs] would have grounds for a potential FCRA claim." *DeAndrade*, 523 F.3d at 68.

The Tenth Circuit has explained that:

> A reasonable reinvestigation, however, does not require [credit reporting agencies] to resolve legal disputes about the validity of the underlying debts they report. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir.2010) ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts.*"); DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir.2008) (holding a reasonable reinvestigation does not entail resolving "legal issue[s] that a credit agency ... is neither qualified nor obligated to resolve under the FCRA").

*Wright* at 1242.

27. Similarly, regarding a legal issue, the *Rooker-Feldman* doctrine precludes Plaintiff's FCRA claim against NCS. "The *Rooker-Feldman* doctrine precludes the Court's jurisdiction under two circumstances: (1) when a state court has actually litigated the plaintiff's federal claims; or (2) when the federal claims are 'inextricably intertwined' with adjudication by a state court." *Coyne v. City of Scranton*, No. 3:25-CV-01091, 2026 U.S. Dist. LEXIS 10107, at

*7 (M.D. Pa. Jan. 20, 2026). For this Court to find that Plaintiff established the FCRA requirement that the information furnished by NCs was inaccurate requires a finding that the debt set forth in the Judgment is invalid, thereby effectively nullifying the Judgment. *See Lennon v. Trans Union, LLC*, No. 25-cv-1431, 2025 U.S. Dist. LEXIS 132701, at *6 (E.D. Pa. 2025) ("Whether the mutual release covered the $3,397 debt now at issue—which Defendant refutes, [] is a "disputed legal question[]" about the scope of the release, not a factual or transcription error.") (record citation omitted) (citing *Chiang*, 595 F.3d at 38).

*28.* Though Plaintiff fails to allege that Defendant reported "inaccurate" information, he is not without recourse. If she maintains that Copper Lodge's Judgment does not apply to her, then could pursue an action against Copper Lodge directly. *See Lennon v. Trans Union*, LLC, No. 25-cv-1431, 2025 U.S. Dist. LEXIS 132701, at *10 (E.D. Pa. 2025) (citing *Mader v. Experian Info. Sols., Inc*., 56 F.4th 264, 271 (2d Cir. 2023) (noting that a plaintiff was "not without options" to resolve a dispute over a debt because he could "dispute the debt directly" with the debtor)). Furthermore, as part of any action against Copper Lodge, Plaintiff could seek "a declaration that [he] no longer owed [the] debt." *Id*. (quoting *Holden* at 1368).

29. Thus, whether determining that Plaintiff's dispute of the debt constitutes a legal dispute, an improper collateral attack, or one prevented by the *Rooker-Feldman* doctrine, NCS could not have resolved Plaintiff's dispute by a reasonable investigation. Plaintiff's dispute required NCS to decide whether Plaintiff's claims of identity theft were true with the existing state court Judgment adjudicating Plaintiff's liability (at a contested trial that recited Plaintiff appeared for the proceeding). Therefore, Plaintiff's dispute did not raise an actionable inaccuracy, without which, Plaintiff has no FCRA claim as a matter of law.

### C. Objectively and Readily Verifiable

30. As stated previously, the Second, Eleventh, Fourth, Fifth and now Tenth Circuits have concluded over the past three years that under the FCRA, reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable by the furnisher as containing a mistake or error. *Sessa* at 42, *Holden* at 1369, *Roberts* at 251, *Reyes*, 140 F.4th at 288; and *Ward* at *21. And as explained, courts must make a threshold legal determination under this standard if the furnisher challenges the sufficiency of the consumer's claim because inaccuracy is a prima facie element of a § 1681s-2(b) claim. *See Holden* at 1369 ("[I]n determining whether a claimed inaccuracy is potentially actionable under § 1681s-2, a court must determine . . . whether the information in dispute is 'objectively and readily verifiable.'" (emphasis added) (quotation marks omitted)); *Ward* at *21 (same).

31. For examples of disputes that are or are not actionable, the Circuits above have provided the following guidance:

- "[A] dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires **credibility determinations and quasi-discovery** isn't either." *Roberts* at 251 (emphasis added).

- "[Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Roberts* at 251.

- "[P]urely factual or transcription errors or a straightforward application of law to facts constitute 'objectively and readily verifiable' information." *Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 U.S. App. LEXIS 14033, 2025 WL 1620921, at *2 (11th Cir. June 9, 2025) (per curiam) (internal quotation marks omitted). "Conversely, allegedly inaccurate information that stems from a dispute without a straightforward answer does not." *Id.* (citation modified).

- W]ithout simply taking [the plaintiff] at his word, his **protestations of innocence do not demonstrate that his innocence is objectively and readily verifiable**. . . . [F]raud schemes are often complex and sifting perpetrator from victim is no easy

process. While we must take Plaintiffs' version of events as true at the pleadings stage, [the CRA] had no such obligation. *Rozov*, 2025 U.S. App. LEXIS 14033, at *8 (emphasis added).

- "[A]lleged inaccurate information is not objectively and readily verifiable [when] it stems from a contractual dispute without a straightforward answer." *Holden*, at 98 F.4th 1368. Conversely, "if a legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable, the FCRA sometimes requires that the implications of that decision be reflected in credit reports." *Mader*, 56 F. 4th at 271 (ultimately finding an "unresolved legal question" about the "validity of [the consumer's] debt means that its status is not sufficiently objectively verifiable to render [his] credit report 'inaccurate' under the FCRA").

- "[C]onsumers may not use [] reinvestigation procedures to collaterally attack the validity of a reported debt… credit reporting agencies are not tribunals and 'are neither qualified nor obligated to resolve legal issues.' … Because consumer reporting agencies lack the authority to adjudicate legal disputes, 'courts have been loath to allow consumer to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims.'" *Reyes*, 140 F.4th at 279 (citations omitted) (rejecting a consumer's argument that "the reported Citibank account information was inaccurate [since] whether she 'owed the debt' (i.e., the outstanding balance) was contested and unresolved" because "her alleged inaccuracy was based on a not-yet-adjudicated position that the debt is not legally valid") (citation modified).

- [Plaintiff's] claim of identity theft is not the type of straightforward application of law to facts that NCS [the data furnisher] could objectively and readily verify. Like the CRA in *Rozov*, NCS would have had to take [the plaintiff] at his word that he was not involved in his daughter's fraud because her scheme was clever—so much so that [plaintiff] claims *he* did not even discover his daughter was the perpetrator until after he filed this lawsuit. *See* 15 U.S.C. § 1681s-2(a)(1)(D) (A furnisher has 'reasonable cause to believe that [disputed] information is inaccurate' when it has 'specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information.' (emphasis added)). Accordingly, [plaintiff] cannot satisfy his prima facie requirement to show that the information was in fact inaccurate." *Ward* at *25-26.

32. Here, following the guardrails put in place by the reasoning of the foregoing Circuit opinions, Plaintiff's dispute did not raise an actionable inaccuracy under the FCRA, because it did not raise an "objectively and readily verifiable" inaccuracy. As demonstrated factually and legally above, even now, NCS cannot resolve the conflict between an objectively verifiable state court

Judgment, taken after a trial, against Plaintiff's protestations that she did not open or authorize anyone to open an account with Copper Lodge. Legal issues aside, for NCS to reach the conclusion that its reporting of the debt was inaccurate, it would have to ignore the Judgment and take Plaintiff's self-serving statements as truth, which it was not required to do. Alternatively, NCS would have to conduct quasi-discovery to independently investigate the identity of the person who rented the apartment from Copper Lodge and who appeared at the trial in Texas, and then make a determination of whether that person and Plaintiff were the same, or that Plaintiff was otherwise connected to a fraudulent scheme allowing others to use her personal information. As provided by the guidance in *Roberts, Rozoz, and Ward*, such an investigation requiring credibility determinations and quasi-discovery to attempt to resolve is not actionable under the FCRA.[2]

33. To conclude that Plaintiff's protestations in her FTC Identity Theft Report and police report satisfy the objectively and readily verifiable standard to establish an inaccuracy would undermine the holdings and reasoning of *Rozov* (dispute based on veracity of the allegations Plaintiffs provided to the FBI that were not objectively and readily verifiable); *Roberts* (not required to act as a tribunal regarding the veracity of Plaintiff's dispute; furnishers are not expected to function as tribunals; and dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform; dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery are all not objectively and readily verifiable); *Holden* (alleged inaccurate information is not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer); and *Reyes* (requiring the resolution of legal issues for which a furnisher is not qualified or obligated to conduct in adjudicating a legal dispute [such as determining the effect of the eviction Judgment]).

[2] Notably, Plaintiff is not without a remedy. Plaintiff can move to set aside the judgment or file a declaratory judgment action against the original creditor. *See e.g.*, *Ward* at *30, n. 8.

34. Moreover, our legal system assigns juries (or courts when acting as fact-finders) the exclusive task of determining the credibility of conflicting evidence. *See Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 262 (3d Cir. 1987) ("Evaluation of witness credibility is the exclusive function of the jury."). Likewise, Plaintiff's claim of identity theft is not the type of straightforward application of law to facts that NCS could objectively and readily verify. Like the CRA in *Rozov*, NCS would have had to take Plaintiff at her word that she was not involved in the Copper Lodge Apartments account. *See* 15 U.S.C. § 1681s-2(a)(1)(D) (A furnisher has "reasonable cause to believe that [disputed] information is inaccurate" when it has "specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." (emphasis added)). Accordingly, Plaintiff cannot satisfy her prima facie requirement to show that the information was in fact inaccurate.

35. Regardless of the standard used, this was a case where Plaintiff's dispute of the debt and claim of inaccuracy because the debt was "not hers" could not have been resolved by NCS, not factually, not legally, and not pursuant to the prevailing objectively and readily verifiable standard. Based on the Court taking judicial notice of the Judgment, as a matter of law, Plaintiff has not alleged a plausible claim under the FCRA. NCS is entitled to judgment with prejudice against Plaintiff pursuant to Rule 12(c).

PLAINTIFF CANNOT ESTABLISH CAUSATION

36. Plaintiff's dispute required NCS to decide whether Plaintiff's claims of identity theft were true. However, due to the existing state court Judgment adjudicating Plaintiff's liability (at a contested trial that recited Plaintiff appeared for the proceeding), Plaintiff cannot establish that, had NCS performed a reasonable investigation, the result would be different. *See Johns*, 2026 U.S. Dist. LEXIS 70403, at *73 (E.D. Pa. 2026); *see also Suluki v. Credit One Bank, N.A.*, 138

F.4th 709, 720 (2d Cir. 2025) (Even assuming an investigation is not reasonable, courts have also concluded that summary judgment in favor of the furnisher is appropriate if a reasonable investigation would not have yielded a different result.) (citing *Felts v. Wells Fargo Bank, NA*, 893 F.3d 1305, 1313 ("[A] plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different." (emphasis in original). *See also, Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775, 776 n.3 (7th Cir. 2023) (collecting cases).

PLAINTIFF CANNOT ESTABLISH WILLFULNESS

37. Even if this Court declines to find that NCS is entitled to judgment on the negligence FCRA claims, NCS is entitled to judgment on the claims concerning a willful violation under 15 U.S.C. § 1681n. Plaintiff alleges that National Credit's conduct was willful, rending NCS liable for statutory and punitive damages under 15 U.S.C. § 1681n. This pleading is insufficient to satisfy the pleading requirements for a willful violation of the FCRA. A willful violation of the FCRA requires that the defendant acted either with actual knowledge that the actions violated the FCRA or in "reckless disregard" of its statutory duty. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57–58 (2007) (analyzing 15 U.S.C. § 1681n(a)). The Supreme Court held in *Safeco*, that a defendant does not act willfully under 15 U.S.C. § 1681n(a) unless its conduct was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." (551 U.S. at 69–70) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Thus, a claim for a willful violation fails unless the conduct at issue was clearly unlawful as established by either "pellucid statutory text" or an "authoritative" interpretation of that text by a federal court of appeals or the Consumer Finance Protection Bureau ("CFPB"). *Id.* at 70. Similarly, the "Third Circuit has more recently held that

where a plaintiff has pointed to no federal court of appeals decisions or authoritative federal agency guidance that could put the defendant "on notice" that its interpretation at issue was incorrect, a district court should reject a claim of willfulness at the motion to dismiss stage." *Horsch v. Wells Fargo Home Mortg.*, 94 F. Supp. 3d 665, 678 (E.D. Pa. 2015) (citing *Long v. Tommy Hilfiger U.S.A., Inc*., 671 F.3d 371, 377-78 (3d Cir. 2012).

38. Plaintiff's complaint is devoid of authority to establish willfulness under similar circumstances, namely where a trial judgment establishes liability of Plaintiff for the subject debt for which Plaintiff claims she is not liable. Indeed, without any judgment that invalidates the Texas state court Judgment, and thereafter furnishing another dispute to the CRAs that results in a verification, Plaintiff cannot establish that NCS acted either with actual knowledge that its conduct violated the FCRA or in reckless disregard of its statutory duty.

## CONCLUSION & PRAYER

With respect to all claims asserted by Plaintiff against NCS, the allegations in the Complaint do not allege an actionable inaccuracy for the reasons outlined in the foregoing arguments. Even if the Court determined that the claimed inaccuracy was actionable, Plaintiff cannot establish causation as a result of the Judgment for liability for the subject debt. As a result, Plaintiff's claims should be dismissed pursuant to Rule 12(c). Alternatively, NCS requests an order that the conduct alleged, in light of the Judgment, prevents any finding of willfulness. NCS also respectfully requests such other and further relief to which it may be entitled consistent with this Motion for Judgment on the Pleadings.

Dated: August 25, 2026.

Respectfully submitted,

By: _______________________________
JOHN W. BOWDICH
State Bar No. 00796233

BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
(214) 307-9500 – Telephone
(214) 307-5137 – Telecopy
jbowdich@bowdichlaw.com

ATTORNEYS FOR DEFENDANT
NATIONAL CREDIT SYSTEMS, INC.

CERTIFICATE OF SERVICE

On August 25, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Virginia, using the electronic case filing system of the court, thereby providing service to all parties including:

Leonard Anthony Bennett, Esq. VIA ECF
CONSUMER LITIGATION ASSOCIATES P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News VA 23601
lenbennett@clalegal.com
ATTORNEYS FOR PLAINTIFF

Lucas D. Beasey, Esq. VIA ECF
BUCHANAN INGERSOLL & ROONEY PC
6900 N. Dallas Parkway, Suite 800
1737 King Street, Suite 500
Alexandria, Virginia 22314
Lucas.beasey@bipc.com
ATTORNEYS FOR CO-DEFENDANT TRANS UNION, LLC

John W. Montgomery, Jr., Esq. VIA ECF
TRAYLOR, MONTGOMERY & ELLIOTT, PC
130 E. Wythe Street
Petersburg, VA 23803
Tel: (804) 861-1122
jmontgomery@tamnde.com
ATTORNEYS FOR CO-DEFENDANT EQUIFAX INFORMATION SERVICES, LLC

By: *s/ John W. Bowdich*
JOHN W. BOWDICH